IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

```
SOUTHERN DISTRICT OF MISSISSIPPI
            F I L E D

         JAN 1 7 2008

            J.T. NOBLIN, CLERK
BY_____DEPUTY
```

JOHN POLITZ AND HELEN POLITZ                                    **PLAINTIFFS**

**VERSUS**                          CIVIL ACTION NO.: 1:08cv18 LG-RHW

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,
U.S. SMALL BUSINESS ADMINISTRATION,
AND JOHN DOES 1 THROUGH 9                                    **DEFENDANT'S**

## COMPLAINT

### (JURY TRIAL DEMANDED)

COME NOW, John Politz and Helen Politz, by and through their counsel of record,
DENHAM LAW FIRM, and file this their Complaint against the Defendant's, Nationwide
Mutual Fire Insurance Company, and John Does 1 through 9 ("John Does"), and allege as
follows:

## I.
## PARTIES

1.      Plaintiffs, John and Helen Politz are adult residents of Harrison County,
Mississippi, residing at 13446 Huntington Circle, Gulfport, Mississippi.

2.      Defendant Nationwide Mutual Fire Insurance Company ("Nationwide") is a
corporation organized and existing under the laws of the State of Ohio, with its principal office
and place of business located at One Nationwide Plaza, Columbus, Ohio 43216, and which may
be served with process by service on its agent for service of process, CT Corporation System of
Mississippi, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232, or on the
Mississippi Insurance Commissioner at Post Office Box 79, Jackson, Mississippi, 39205-0079,
pursuant to Mississippi Code Annotated section 83-21-1.

1

3.      Defendant SBA is a governmental entity and may be served with process pursuant to Federal Rule of Civil Procedure 4(i)(1)(A) by service on the United States Attorney for the Southern District of Mississippi, Dunn Lampton, 188 East Capital Street, Suite 500, Jackson, Mississippi 39201, and by service on the United States Attorney General, Alberto R. Gonzales, at 950 Pennsylvania Avenue, NW, Washington, DC 20530-001.  This Defendant is joined herein for the sole purpose of giving them notice of this suit because they are a lien holder, and **no other relief is requested**. [1]

4.      Defendants John Does 1 through 10 are entities affiliated with Nationwide and/or have acted in concert with Nationwide, and whose identities are currently unknown.   All allegations and claims asserted herein against Defendants are incorporated herein by reference against John Does 1 through 10.   Said John Does, when their identities are known, will be identified by name and joined in this action, if necessary, pursuant to the Federal Rules of Civil Procedure.

## II.
## SUBJECT MATTER AND PERSONAL JURISDICTION

5.      This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000.00.

## III.
## VENUE

6.      Venue in this case is proper in this Court pursuant to 28 U.S.C. § 1391, because this suit respects real and personal property located exclusively in Harrison County, Mississippi, and the conduct, acts and/or omissions upon which this cause of action is based occurred in

---

[1] First Horizon Home Loan Corporation was not included as a party due to the fact that the Mortgage was paid in full on or about August 17, 2007.

Harrison County, Mississippi, which is completely within the United States District Court for the Southern District of Mississippi, Southern Division.

## IV.
## FACTS AND GENERAL ALLEGATIONS

7.      Plaintiffs are residents of Gulfport, Mississippi and have been loyal insureds of Nationwide for years.  They have dutifully paid premiums to Nationwide.

8.      Mr. and Mrs. Politz purchased from Nationwide a standard "Homeowners Policy" ("subject policy"), naming John and Helen Politz as the insured.  The subject policy insured the dwelling at 116 Winters Lane, Long Beach, Mississippi ("insured residence"), the personal property thereof, and loss of use for actual loss sustained.  A representative copy of the subject policy is attached hereto and incorporated herein as Exhibit "A" to Complaint.

9.      The subject policy was underwritten, marketed, sold, and issued to Plaintiffs by Defendant, which acted by, through and/or in conjunction with its agent, John L. French.

12.     Based on the representations of hurricane coverage made by Nationwide and its agent, and the express and implicit policy coverage, Mr. and Mrs. Politz reasonably relied on said representations and purchased the subject policy with the realistic expectation that the subject policy would provide full and comprehensive coverage for damage to the insured residence.

13.     The subject policy, through its "Covered Causes of Loss" under "Perils Insured Against" covers "accidental direct physical loss to property described in Coverages A and B except for losses excluded under Section I – Property Exclusions."  The subject policy purports to provide full and comprehensive coverage for all losses to the insured property proximately and efficiently caused by rain, wind, wind-propelled objects or breaches by wind.  The "Dwelling" is covered under "Coverage A" and "Other Structures" are covered under "Coverage B."  The

Homeowners Policy also covers "accidental direct physical loss" to personal property under "Coverage C" for losses caused by the following:

1. fire or lightning.

2. windstorm or hail.

> Direct loss caused by rain, snow, sleet, sand or dust driven through roof or wall openings made by direct action of wind, hail, or other insured peril is covered. ...

(Exhibit "A" – See "Perils Insured Against – Covered Causes of Loss".)

14. Based on the representations made by Nationwide and its agents, and the express and implicit policy coverage, the Plaintiffs reasonably relied on said representations and purchased the subject policy with the reasonable expectation that the subject policy would provide full and comprehensive coverage for damage to the insured residence.

10. The subject policy, through its "Coverages" and "Losses Insured" provisions, also purported to provide full and comprehensive coverage for all loss to insured property proximately and efficiently caused by rain, wind and wind-propelled objects. (See Exhibit "A".)

11. Based on the representations of hurricane coverage made by Nationwide and its agent, and the express and implicit policy coverage, Mr. and Mrs. Politz reasonably relied on said representations and purchased the subject policy with the reasonable expectation that the subject policy would provide full and comprehensive coverage for damage to the insured residence caused by wind, rain, and wind-propelled objects.

12. On August 29, 2005, within the subject policy period, the insured residence and the personal contents therein were proximately and/or efficiently destroyed by the winds, rain, and wind-propelled objects of Hurricane Katrina. It is undisputed that the storm surge reached the subject property; however, by the time the surge arrived, the insured residence had already

been rendered uninhabitable and damaged in excess of the limits of the subject policy. The Politz home and contents are gone. The storm surge, which arrived at the residence subsequent to the peak winds, washed the debris from the home site. There is nothing left of the insured residence or contents but a slab.

13.    Almost immediately thereafter, and in accordance with the subject policy provisions, Mr. and Mrs. Politz notified Nationwide of the covered loss.

14.    On September 8, 2005, Nationwide issued a "loan" to the Plaintiffs in the amount of $3,000.00 for additional living expense. Nationwide thereafter on November 16, 2005, issued an additional check to Plaintiffs for the same amount for additional living expense. A copy of the Loan Receipts with payment summary is attached as Exhibit "B" to the Complaint.

15.    On or about September 29, 2005, Nationwide adjuster, Brian Phillips, inspected the Politz property. Thereafter Mr. Phillips sent Mr. and Mrs. Politz a letter enclosing an itemized estimate of wind damages to their property wherein Nationwide tendered $500.00 to Plaintiffs calculated as follows:

| | |
|---|---|
| Live Tree Debris Removal | $ 500.00 |
| Refrigerated Property | $ 500.00 |
| Replacement cost value | $1,000.00 |
| Less Deductible | - ($ 500.00) |
| Net Claim | $ 500.00 |

The "Grand Total Areas" for the roof, walls, ceiling, flooring, etc. on the summary are 0.00. Mr. Phillips' letter to the Mr. and Mrs. Politz albeit more than likely a form letter provided no basis for the denial of Plaintiffs claim and instead caused additional emotional distress to Mr. and Mrs. Politz who lost their entire home and contents by stating,

> Please refer to the enclosed itemized estimate of repairs to restore
> your property.  This estimate represents the covered damages for
> the reported loss and was prepared using local cost.  If you choose
> to hire a contractor, please provide this estimate to them.

The letter went on to state that the remainder of the claim was being reviewed by the company.

A copy of this letter and summary is attached as Exhibit "C" to the Complaint.

      12.     On October 1, 2005, Bryan Phillips in the Nationwide Claims Department sent

Plaintiffs a "Reservations of Rights" letter stating that there were some potential coverage

questions under their homeowner's policy that were being investigated.  The letter went on to

state

> The potential coverage questions being investigated concern the
> possibility of flood or surge damages having occurred to your real and/or personal
> property insured under the NATIONWIDE MUTUAL FIRE INSURANCE
> COMPANY policy.

Your Homeowners policy reads in part under Property Exclusions:

1.     We do not cover loss to any property resulting directly or indirectly from
      any of the following. Such a loss is excluded even if another cause or
      event contributed concurrently or in any sequence to cause the loss.

  b.    Water or damage caused by water-borne material. Loss resulting from
       water or water-borne material damage described below is not covered
       even if other perils contributed, directly or indirectly to cause the loss.

Water and water-borne material damage means:

(1)   flood, surface water, waves, tidal waves, overflow of a body of water, spray
       from these, whether or not driven by wind.

(2)   water or water-borne material which:

    (a)  backs up through sewers or drains from outside the dwelling's
       plumbing system: or

    (b)  overflows a sump pump, sump pump well or other system designed to
       remove subsurface water or water-borne material from the foundation
       area.

(3)    Water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure...

The purpose of this letter is to formally notify you that NATIONWIDE MUTUAL FIRE INSURANCE COMPANY's willingness to investigate this claim does not constitute a waiver of any rights under the policy. The company's position relative to coverage will be stated upon completion of this investigation.

A copy of this letter is attached as Exhibit "D" to the complaint.

16.    October 17, 2005, an investigation of the residence was conducted by HAS Engineers & Scientists, which is a member of Conestoga-Rovers & Associates, which was hired by Nationwide to prepare a report from the inspection of the residence. The report prepared on November 29, 2005, stated, "No structural analysis was performed on any portion of this structure to determine the load carrying capacity of the structural systems or elements." No time line is established by the preparer for when he claims the surge or maximum wind speeds reached the Politz residence. Nonetheless, Pressely L. Campbell, Ph.D, working for Conestoga-Rovers & Associates stated, inter alia, "The referenced structure was razed by a combination of forces consisted primarily of hurricane induced storm surge, wind-driven waves, and the impact of floating debris." No wind damage whatsoever was assessed to the property in the report even though information is readily available regarding Hurricane Katrina, a windstorm whose maximum winds pounded the Mississippi Gulf Coast prior to the height of the storm surge. A copy of the HAS/Conestoga-Rovers & Associates report is attached as Exhibit "E" to the Complaint.

17.    On January 10, 2006, Steve Songe from the Nationwide Claims Department sent Plaintiffs a letter denying their claim specifically stating

Nationwide Mutual Fire Insurance Company ("Nationwide") has performed an investigation and inspected the damages to your property. Based on this

investigation and the information available to Nationwide, a portion of your claim has been determined to be from a covered peril and portions have been determined to be from water or water-borne material as defined in your policy. Unfortunately, your policy with Nationwide does not provide coverage for this cause of loss and we must deny that portion of your claim.

Nationwide then recites the Property Exclusions from the Homeowner's policy.

A copy of Nationwide's January 10, 2006 letter is attached as Exhibit "F" to the Complaint.

18.    On January 20, 2006, Nationwide sent Plaintiffs a form letter regarding the emergency regulation giving them the right to attend a mediation conference with their insurers. A copy of Nationwide's January 20, 2006 letter is attached as Exhibit "G" to the Complaint.

19.    Approximately March 31, 2006, Plaintiffs provided Nationwide with a listing of their losses including refrigerator and freezer items.  On May 2, 2006, Nationwide sent Plaintiffs another estimate for repairs needed to restore their damaged property letter with a summary for wind damages.  In this summary Nationwide paid Plaintiffs $500.00 for losses due to food spoilage.  The summary additionally states, "No other Additional Living Expenses will be allotted," even though Plaintiffs informed Nationwide they continued to incur additional living expenses.  A copy of this Nationwide's letter with estimate is attached as Exhibit "H" to the Complaint.

20.    On August 9, 2006, Plaintiffs' counsel wrote a notice of representation letter to Nationwide Mutual Fire Insurance Company, and made several inquiries about Plaintiffs' claim including but not limited to requesting a certified copy of the policy and any reports obtained by Nationwide.  A copy of this letter is attached as Exhibit "I" to the Complaint.

21.    On October 10, 2006, Plaintiffs' counsel received Nationwide's October 8, 2006, letter acknowledging their representation of Plaintiffs and stating "Nationwide has issued all payments due to your client under the policy based upon our coverage investigation with the

possible exception of the Additional Living Expenses coverage part which was available during the time Nationwide was investigating the claim." The letter itemizes the total $7,000.00 payments made by Nationwide to the Plaintiffs for wind damage. Nationwide also states the $500 policy deductible was absorbed in the excess loss over the policy limits for the food and tree losses. A copy of this letter is attached as Exhibit "J" to the Complaint.

22.    On December 14, 2006, Plaintiffs' counsel sent Nationwide a letter enclosing a DMD Services Report prepared by Rocco Calaci on behalf of Plaintiffs. Mr. Calaci's opinion of the damages to the Politz residence located at 116 Winters Lane, Long Beach, Mississippi, was that the residence was destroyed by a combination of factors from overhead microburst, severe weather including high wind speeds, shear and bow echoes, and flying debris from surrounding properties. This letter also requested a response to Plaintiff's counsel previous letter. A copy of this letter is attached as Exhibit "K" to the Complaint.

23.    On January 24, 2007, Nationwide representative James Edwards sent Plaintiffs' counsel a letter stating a certified copy of the Plaintiffs' policy has been requested and will be forwarded. A copy of this Nationwide letter is attached as Exhibit "L" to the Complaint.

24.    On March 21, 2007, Nationwide representative Duane Collins sent Plaintiffs' counsel a letter stating the claim had been reassigned to him and asking to schedule an appointment to discuss the Plaintiffs claim. A copy of this Nationwide letter is attached as Exhibit "M" to the Complaint.

25.    On April 12, 2007, Plaintiffs' counsel sent a letter to Nationwide Claims Associate Duane Collins requesting that Nationwide make a settlement offer to Plaintiffs and reiterating that Plaintiffs home was destroyed down to the slab by Hurricane Katrina. A copy of this letter is attached as Exhibit "N" to the Complaint.

26.    On April 18, 2007, approximately one year and eight months after Hurricane Katrina, Nationwide Claims Representative Martin Gatte sent Plaintiffs' counsel a letter stating, "Nationwide's philosophy has been to adjust claims as promptly as reasonably practicable under the coverage purchased." The letter enclosed a letter of notification regarding arbitration pursuant to Mississippi Department of Insurance Emergency Regulation No. 2007-3. A copy of this letter is attached as Exhibit "O" to the Complaint.

27.    On April 26, 2007, Nationwide representative Martin Gatte sent Plaintiffs' counsel a letter regarding their meeting of the same date in regards to Plaintiffs' claim and stating they provided a copy of Nationwide's wind estimate to them. A copy of Nationwide's wind estimate is attached as Exhibit "P" to the Complaint. The letter also requested receipts for contents damages and additional living expenses. A copy of this Nationwide letter is attached as Exhibit "Q" to the Complaint.

28.    On July 17, 2007, almost two years after the Plaintiffs lost their entire home and personal possessions Nationwide provided Plaintiffs' counsel with an estimate for wind damages to the Plaintiffs home in the amount of $30,339.57 as a total amount for Plaintiffs entire claim. A copy of this Nationwide estimate is attached as Exhibit "R" to the Complaint.

29.    On July 19, 2007, a Nationwide Claims Representative sent Plaintiffs' counsel a letter stating he was sorry an agreeable resolution could not be reached and enclosed a check in the amount of $30,339.57 for damages which Nationwide believes it owes to the Plaintiffs and that they understand Plaintiffs do not agree with the amount. A copy of this Nationwide letter is attached as Exhibit "S" to the Complaint.

30.    Nationwide wholly failed to conduct a reasonable investigation and adjustment regarding the cause of damage to the Politz property. Nationwide refused to consider evidence

which proved that the Politz property was damaged by a covered peril. Nationwide even admitted that wind damage had occurred to the Politz property and that Nationwide could not prove what, if any, damage was attributable to water, but still refused to provide adequate payment for the loss.

31.    Unbeknownst to Plaintiffs, Nationwide had, since August 29, 2005, engaged in a calculated course of corporate conduct designed to wrongfully deny Plaintiffs' claims and the claims of other Mississippi Gulf Coast insured who, like the Plaintiffs, had their homes destroyed down to the slab by Hurricane Katrina, a windstorm.

32.    Nationwide's position in this directly contradicts Mississippi insurance law, in existence for the last forty years, which mandates full insurance coverage if the hurricane winds were the efficient proximate cause of the loss. It is uncontroverted that loss caused by hurricane and/or tornadic wind is covered under the subject policy.

33.    Additionally, as the policy at issue is an "all risk" policy, all risks of accidental direct physical loss are covered by the subject policy unless specifically excluded by the terms of the subject policy. In such policies, insured such as the Mr. and Mrs. Politz only have the burden of showing the existence of a covered loss, at which point the burden of proof shifts to the insurer, Nationwide, to establish the applicability of a named exclusion under the facts of the case and the terms of the policy.

34.    In this case, there is no question that Mr. and Mrs. Politz have established a loss covered by the subject policy. Thus, Nationwide has the burden to prove that the loss was attributable to an excluded peril such as "flood," and not to a covered peril, such as wind. Nationwide has not met this burden of proof and cannot meet it. Despite its inability to meet the burden of proof, Nationwide continues to refuse to tender policy limits to Mr. and Mrs. Politz.

35.    Defendant intentionally and deliberately, with reckless disregard for the rights of insureds, pursued a course of action, concealed from the Plaintiffs and other homeowners, designed to reduce Nationwide's exposure for losses by abandoning its duty to investigate individual Hurricane Katrina "slab cases" by issuing sweeping across the board denials of insureds' claims.  Further, the Defendants have repeatedly denied claims, thus delaying payment as long as possible, and continued this deliberate misconduct, in order to retain the money wrongfully withheld from insureds such as the Plaintiffs.

36.    The actions of Nationwide concealed not only from Nationwide policyholders but also from the Mississippi Department of Insurance, were designed to, and did in effect, shift the burden of establishing the cause of accidental direct physical loss under the Defendant's all risk policy in "slab cases" from the Defendant to the policyholders.

37.    An insurance contract is a contract of adhesion, and should be construed in the light most favorable to the insured.

38.    Inherent in any insurance contract, and in the policy at issue, is that payment must be made promptly so that the insured may be put back into the position he or she was in prior to the loss, and as quickly as possible.

39.    A special relationship exists between an insurer and its insured; such relationship is best characterized as one of the utmost good faith and fair dealing.

40.    Mr. and Mrs. Politz have complied with all conditions precedent to obtaining payment of benefits under the subject policy, and Nationwide has waived and/or is estopped from raising such conditions precedent.

41.    Defendants are merely attempting to dodge their coverage obligations to the Plaintiffs under the subject policy by wrongfully characterizing their damage as "flood or storm

surge," and by failing to conduct the reasonable investigation required; Defendants shirked their duties and acted in an intentionally and deliberately wrongful manner to avoid paying Plaintiffs' claim.

42.    Nationwide's actions, on information and belief, were motivated, in part, by Nationwide's desire to (a) save money on slab clams in violation of their duties to Plaintiffs and others similarly situated, and (b) shift liability for the greater portion of Katrina losses from Nationwide to the National Flood Insurance Program.

43.    Defendants had ample opportunity to investigate the claim and determine whether the loss was caused by wind or "flood or storm surge" or both, and then make a reasonable determination based on the evidence as to which part of the loss was attributable to wind and which part was attributable to "flood or storm surge." Instead, the Defendants chose to adopt a course of conduct designed to benefit the insurance companies at the expense of policyholders and the National Flood Insurance Program.

44.    Plaintiffs are therefore entitled to full coverage under the subject policy for the damage to their property, injunctive relief, specific performance of the Contract, indemnity, unjust enrichment, other such equitable relief, and extra-contractual, compensatory and punitive damages.

**V.**
**COUNT ONE:**
**DECLARATORY JUDGMENT**

45.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all of the above Paragraphs of the Complaint.

46.    This count is an action for declaratory judgment pursuant to Federal Rule of Civil Procedure 57.

47.     On the occasion of Hurricane Katrina, Mr. and Mrs. Politz's insured property was totally devastated by wind and wind-propelled objects.  However, Nationwide has maintained and continues to maintain the position that it owes no obligation to provide full coverage benefits to the Politz's for their loss and damage, relying on the exclusions in the subject policy.

49.     Nationwide has admitted that wind damage to the Plaintiffs' property occurred, which is a covered peril.  In order to deny coverage for the Plaintiffs' loss resulting from Hurricane Katrina, Nationwide has the burden to prove that the loss was attributable to an excluded peril, such as "flood," rather than a covered peril, such as wind.

50.     Nationwide has not met and cannot meet its burden of proof.  The damage to the Plaintiffs' property is thus covered under the subject policy.  Nationwide should have tendered the Plaintiffs their policy limits as soon as it became apparent that it could not meet said burden of proof.

51.     Nationwide had a duty to investigate and process Plaintiffs' claim in good faith and in a diligent and timely manner, but it failed to do so.

52.     Wherefore, the Plaintiffs respectfully seek a declaration from this Court that:

(a)     Nationwide breached its policy obligations to its insured, Mr. and Mrs. Politz, and owes coverage for the damage sustained to the insured property due to Hurricane Katrina;

(b)     In order to deny coverage for the Plaintiffs' claim under the subject policy, Nationwide has the burden to prove that the loss was attributable to an excluded peril and not to a covered peril;

(c)     Nationwide has not met and cannot meet its burden of proof, and the loss and damage is thus covered under the subject policy; and

(d)     Mr. and Mrs. Politz are entitled to an award of damages for the full value of all coverages available to them under the policy, and such other extra-contractual damages or relief

as this Court may deem fit to make them whole; Mr. and Mrs. Politz are entitled to receive a trial by jury on all issues triable.

## COUNT TWO:
## SPECIFIC PERFORMANCE OF INSURANCE CONTRACT

53.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all of the above Paragraphs of the Complaint.

54.    Nationwide entered into the subject contract of insurance with the Plaintiffs wherein it clearly and expressly agreed to provide insurance coverage for physical loss to property and loss of use proximately and efficiently caused by wind, rain, wind-propelled objects or breaches by wind.  Plaintiffs, in turn, have paid Nationwide substantial premiums.

55.    Plaintiffs have now suffered total destruction of their insured residence and property as a proximate and direct result of covered losses, and have consequently been denied use of their residence.

56.    Plaintiffs have performed their end of the bargain and are accordingly now entitled to Specific Performance of their subject insurance contract.  Nationwide is in breach of its contractual obligations to Plaintiffs.   The Court should therefore require Nationwide to specifically perform such agreement.

## COUNT THREE:
## INDEMNITY

57.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all of the above Paragraphs of the Complaint.

58.    Nationwide is obligated under the subject policy and by its representations to provide full insurance coverage to Plaintiffs for all damage to the insured residence, property,

and loss of use caused by wind, rain, wind-propelled objects or breaches by wind, and damage caused by water entering through breaches made by wind.

59.    However, Nationwide has denied Plaintiffs their insurance coverage and has refused to pay them for their entire covered loss.

60.    As a direct and proximate result of Nationwide's denial, Plaintiffs have been and will continue to be forced to pay a substantial amount of money out of their own pockets for their loss of use of the insured residence.  To rebuild, repair and/or replace the destroyed property, Plaintiffs would have been required to expend well in excess of the policy limits, which would have resulted in additional debt.

61.    The expenses that Plaintiffs have incurred and continue to incur as a result of Nationwide's refusal to pay them what is owed are expenses that Nationwide, in all fairness and equity, should pay under the subject policy or otherwise.  Plaintiffs are therefore entitled to indemnity from Nationwide for all sums they have expended and will be required to expend, as well as debt they will be required to incur, as well as any sums expended or debts incurred as a result of being forced to hire engineers, attorneys and other experts in order to recover sums under their insurance contract.

## COUNT FOUR:
## UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

62.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all of the above Paragraphs of the Complaint.

63.    In marketing, selling and issuing the subject policy to Plaintiffs, Nationwide represented and agreed to obtain and provide Plaintiffs with full coverage for property damage and loss of use, as well as for damage proximately caused by winds, rain, wind-propelled objects

or breaches by wind. These representations and contractual obligations are also evidenced by the subject policy's coverage provisions.

64.     Plaintiffs have paid Nationwide substantial monetary premiums for such coverage.

65.     Despite realizing substantial premiums from Plaintiffs, Nationwide has withheld the insurance proceeds owed to Plaintiffs for the damage to their insured property.

66.     By purposefully mischaracterizing the damage to Plaintiffs' residence and property as being caused by "water or water borne material" despite a complete lack of evidence or diligent investigation, and despite the fact that Nationwide was well aware that it could not prove that Plaintiffs' property was damaged by excluded perils, Nationwide has wrongfully realized insurance premiums and withheld insurance proceeds to which the Plaintiffs are entitled, and has gained interest on such sums.

67.     Nationwide has therefore been unjustly enriched at Plaintiffs' expense.

68.     Plaintiffs have suffered injury as a proximate result of Nationwide's unjust enrichment. Plaintiffs have been forced to pay for costs and living expenses that should, in equity and good conscience, be borne by Nationwide under the subject policy.

69.     As a proximate result of Nationwide's false representations and refusal to provide full insurance coverage under the subject policy for the damage to Plaintiffs' insured residence and property, Nationwide is in possession of premiums, insurance proceeds and other monies that it should not, in equity and good conscience, be entitled to retain.

70.     Plaintiffs are therefore entitled to damages resulting from Nationwide's unjust enrichment, including, but not limited to, the imposition of a Constructive Trust on all premiums

Plaintiffs paid to Nationwide and on the insurance proceeds wrongfully held by Nationwide under the subject policy.

## COUNT FIVE:
## BAD FAITH/FRAUD

71.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all of the above Paragraphs of the Complaint.

72.    Nationwide had a duty to undertake a prompt and reasonable investigation into the Plaintiffs' claim and to base its decision on the evidence.  Upon information and belief, Nationwide purposefully delayed its investigation, processing and payment of Plaintiffs' claim.

73.    It is evident even in Nationwide's assessment of the Plaintiffs residence and its engineers evaluation that the Plaintiffs' home was totally destroyed by Hurricane Katrina.  Upon information and belief, Nationwide, through its agents, employees or representatives, employed fraudulent, result-oriented engineering practices, and upon information and belief, Nationwide encouraged HAS and/or Conestoga Rovers & Associates, to write or alter its engineering report to attribute the damage to Plaintiffs' insured residence to water rather than wind.

74.    Nationwide had a duty to pay Plaintiffs' claim for perils covered under the subject policy.  Nationwide knew that it was incumbent upon it, in denying Plaintiffs' claim, to meet the factual burden of proving that the damage to Plaintiffs' property was due solely to an excluded peril such as flood.  Nationwide knew it was impossible for it to do so, but, nevertheless, denied Plaintiffs' claim.

75.    Because of Nationwide's conduct in handling and denying Plaintiffs' claim, Plaintiffs have suffered severe depression, emotional distress and mental anguish.  Nationwide knew that Plaintiffs lost everything they owned, but nevertheless unreasonably denied Plaintiffs'

claim. Further, Nationwide exercised unreasonable delay in its paltry investigation of said claim, further causing mental anguish to Plaintiffs and stress. Such depression, emotional distress, mental anguish and stress were clearly foreseeable results of Nationwide's unreasonable denial of Plaintiffs' claims.

## COUNT SIX:
## WAIVER AND ESTOPPEL

76.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all of the above Paragraphs of the Complaint.

77.    Nationwide had the obligation to establish what part, if any, of the loss fell under the terms of its exclusion.  By declaring its burden of proof irrelevant and intentionally abandoning its obligation to establish what, if any, part of the loss was excluded, Defendant has waived its right to attempt to put on "after-the-fact" evidence to exclude any part of the loss.

78.    Nationwide induced the Plaintiff to rely on its representations that it was handling the claim in good faith, while at the time, it had actually already adopted, its undisclosed and unsupported wind/water procedures by which coverage under the subject policy was to be denied in Plaintiffs' situation.  Defendant fraudulently concealed said fact and fraudulently induced the Plaintiffs to act to the detriment of their substantial homeowners claim by accepting payment under the flood policy prior to, instead of simultaneously with, the homeowners' claim. Defendant should be estopped from denying that it owes full coverage under the Homeowners policy to the Plaintiffs and all Defendant's insureds similarly situated.

## VI.
## REMEDIES

79.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all of the above Paragraphs of the Complaint.

80.     Plaintiffs are entitled to declaratory relief as to the rights and obligations of the parties under the subject policy.

81.     Plaintiffs are entitled to full insurance coverage under the subject policy for the damage to the insured residence and property, as well as other monies they should have been paid under the subject policy, and other such equitable relief set forth in the Complaint, including, but not limited to, specific performance, indemnity and/or a constructive trust.

82.     Plaintiffs are entitled to recover consequential and incidental damages caused by Nationwide's refusal to honor its obligations under the subject policy and otherwise.

83.     Plaintiffs are entitled to recover punitive and/or exemplary damages for Nationwide's bad faith denial of coverage and the fraudulent behavior of Nationwide and its agents, employees or representatives.

84.     Plaintiffs are entitled to recover damages for pain and suffering, emotional distress, mental anguish, loss of consortium, loss of enjoyment of life and such other extra-contractual damages as may be appropriate.

85.     Plaintiffs are entitled to recover attorneys' fees, litigation expenses, funds expended on experts, pre-judgment interest, and post-judgment interest as such expenses incurred by Plaintiffs were clearly foreseeable to Nationwide as a result of its conduct.

WHEREFORE, PREMISES CONSIDERED, your Plaintiffs demand judgment against the Defendant, Nationwide, of actual damages in the amount of the limits of liability of their insurance policy, other structures, personal property, loss of use, and any other sums they should have been paid under the insurance policy, extra-contractual damages and punitive damages in an amount sufficient to make Plaintiffs whole and deter future wrongful conduct of the

Defendant, together with all costs, attorneys' fees and pre- and post-judgment interest.  Plaintiff

requests any further relief that may be appropriate.

RESPECTFULLY submitted, this the 15 day of January , 2008.

JOHN POLITZ AND HELEN POLITZ

BY: DENHAM LAW FIRM

BY: _____

KRISTOPHER W. CARTER
MS Bar No. 101963


KRISTOPHER W. CARTER, MS Bar No. 101963
DENHAM LAW FIRM
424 Washington Avenue, Post Office Drawer 580
Ocean Springs, MS 39566-0580
(228) 875-1234, (228) 875-4553 Facsimile