UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN POLITZ and HELEN POLITZ                        PLAINTIFFS

V.                                    CIVIL ACTION NO.1:08CV18 LTS-RHW

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
U.S. SMALL BUSINESS ADMINISTRATION, ET AL.           DEFENDANTS

## MEMORANDUM OPINION
## ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT
## AND TO STRIKE PLAINTIFFS' CLAIMS FOR EMOTIONAL DISTRESS

The Court has before it Nationwide Mutual Fire Insurance Company's (Nationwide) motion [158] for summary judgment and its motion [110] to strike the plaintiffs' claims for emotional distress. For the reasons set out below, the motion for summary judgment will be granted in part and denied in part. The motion to strike will also be granted in part and denied in part.

Plaintiffs John and Helen Politz (the Politzes) resided at 116 Winters Lane, Long Beach, Mississippi, at the time of Hurricane Katrina. John Politz is now deceased, and claims for damages on his behalf are no longer viable. See docket entry [193]. Their residence was insured under a Nationwide homeowners policy (policy number 6323 HO 164506) providing limits of coverage of $106,800 (dwelling), $10,600 (other structures), $74,760 (personal property), and $21,360 (loss of use). This Nationwide policy excludes damage caused by flooding, including storm surge flooding.

Plaintiffs' home was reduced to a slab by the storm forces. Plaintiffs applied for and received a grant from the Mississippi Development Authority (MDA). Plaintiffs' grant application acknowledges that their residence was damaged by flooding. In its initial evaluation of the plaintiffs' claim, Nationwide reached the conclusion that all of the damage to the insured property was caused by storm surge flooding or concurrently caused by storm surge flooding and other windstorm damage.

On or about September 29, 2005, Nationwide's adjuster inspected the storm damage. Nationwide ordered an engineering report for the insured property, and Conestoga/HAS Engineers reported the results of its inspection on or about November 29, 2005. Based on this report, on January 10, 2006, Nationwide denied any liability for the plaintiffs' loss. Nationwide did not deny that a part of the plaintiffs' loss was from a covered cause, i.e. windstorm, but Nationwide denied any liability in light of the concurrent cause language in the policy.

In or about May 2006, Nationwide concluded that it owed the plaintiffs $500 for live tree debris removal and $500 for loss of refrigerated property. Nationwide applied the deductible under the plaintiffs' policy ($500) and tendered a check for $500 to the plaintiffs for these losses. Nationwide tendered, on two occasions, $3,000 for additional living expenses, but the status of these payments, whether the payments were loans or payments of policy benefits for additional living expenses, is uncertain.

In July 2007, Nationwide reconsidered the merits of the plaintiffs' property damage claim and tendered $30,339.57 in policy benefits. The plaintiffs first declined this offer, and later reconsidered and accepted this offer. The parties agree that there were no "other structures" at the insured residence, and this portion of the Nationwide coverage is not in dispute. I will grant Nationwide's motion with respect to this coverage.

### Coverage for the Plaintiffs' Residence: Burden of Proof and Evidence Presently in the Record

Nationwide asserts that the storm winds and storm surge flooding acted to cause the same damage to the plaintiffs' property (both the real and the personal property insured under the homeowners policy) and, in these circumstances, Nationwide contends that the policy exclusion for damage attributable to concurrent causes renders the plaintiffs' claim invalid as a matter of law. Nationwide also contends that the insured property was not rendered uninhabitable by a covered cause of loss.

The provision Nationwide is relying upon appears in the section of the policy entitled "Property Exclusions." That provision states:

> *1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.*

Nationwide construes this policy provision very broadly, asserting, in effect, that its policy does not cover damage to any property (real or personal) that was ultimately damaged by storm surge flooding. Nationwide asserts that it makes no difference whether the insured property sustained damage from a covered cause (wind or rain that enters through a breach in the walls, windows, or roof of the insured dwelling) before being further damaged by storm surge flooding.

In *Dickinson v. Nationwide,* 2008 WL 1913957, I addressed Nationwide's argument on this point at considerable length. Suffice to say, it is still my view that Nationwide's concurrent cause language does not exclude any covered damage to the insured property that occurs before the damage done by storm surge flooding.

Since Nationwide is relying on an exclusion from coverage, i.e. the flood exclusion, Nationwide has the burden of proving the merits of this policy defense. There is testimony in the record that indicates how difficult an undertaking this is in the circumstances of this type of claim, i.e. a claim where only a slab remains after a storm with extremely strong winds and storm surge flood waters. My review of the deposition testimony now in the record, particularly the testimony of Nationwide's representatives, indicates that there is a genuine issue of material fact on the question of what property was damaged by the storm winds versus the damage caused by storm surge flooding. I will therefore deny Nationwide's motion for summary judgment on this point.

**Proof of Loss of Personal Property and Additional Living Expenses**

Nationwide asserts that the plaintiffs have never filed a proof of loss for their personal property or documentary evidence of the additional living expenses they incurred. On these alternative grounds, Nationwide seeks summary judgment for its personal property coverage and for its additional living expense coverage. The Nationwide policy provides, in the section entitled Property Conditions:

> 3. *Your Duties after Loss. In case of loss, you must:*
>
>     a) *give immediate notice to us or our agent; . . .*
>     b) *protect the property from further damage. . . .*
>     c) *as often as we reasonably require:*
>         (1) *show us the damaged property; and*
>         (2) *provide records and documents we request and permit us to make copies.*
>         (3) *submit to examinations under oath and sign same. . . .*
>
>     d) *submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:*
>         (1) *the time and cause of loss.*
>         (2) *interest of the insured and all others in the property involved and all liens on the property.*
>         (3) *other insurance that may cover the loss.*
>         (4) *changes in title or occupancy of the property during the term of the policy.*
>         (5) *specifications of any damaged property and detailed estimates for repair of damage.*
>         (6) *a list of damaged personal property showing in detail the quantity, description, actual cash value, and amount of loss. Attach all bills and receipts that support the figures.*
>         (7) *receipts for additional living expenses and records supporting the fair rental value loss. . . .*

Nationwide's motion states, "[R]egarding Cover C, all of Plaintiff's contents would have been destroyed by storm surge even if some of them were first damaged by wind or wind-driven rain. Moreover, despite Nationwide's request for her to do so, Mrs. Politz has failed to provide any itemized list of contents for items which she claims were damaged solely by wind. Nationwide is therefore entitled to summary judgment with respect to Coverage C." (Nationwide motion at page 3)

Except for the Interrogatories propounded during this litigation, I have not seen, among the documents Nationwide submitted in support of this motion, any written request for the itemization of the personal property damaged by the storm. Nor have I seen any separate written request for a sworn proof of loss or for verification of the plaintiffs' additional living expenses. Plaintiffs indicated, in response to Nationwide's interrogatories that a list of damaged personal property would be provided by supplementation, but I have not seen such a supplemental response to Nationwide's interrogatories on this point. In her deposition, Mrs. Politz testified that she made a list of the personal property lost in the storm and estimated its replacement cost to be approximately $99,000. (Deposition of Helen Politz, Pages 94 - 97) The list she prepared in making this estimate has now been lost. Mrs. Politz also testified that about ten days after the storm she and her husband rented an apartment. Nationwide sent the plaintiffs a check for $3,000 at or near the time the apartment was rented (Deposition of Helen Politz, Pages 137 -140) and a second check for $3,000 several weeks later. (Deposition of Helen Politz, Page154 - 161) The plaintiffs lived in this apartment until January 2006, when they moved into a FEMA trailer. (Deposition of Helen Politz, Page 167) Six months later the plaintiffs purchased a new home and moved in. (Deposition of Helen Politz, Pages 176 -177)

Nationwide has now specifically brought the matter of the itemization of the damaged personal property to the Court's attention, and I will require the plaintiffs to provide this itemization, in the form of a sworn proof of loss for personal property. I will also require Mrs. Politz to provide an affidavit of the additional living expenses she incurred and all receipts or other documentation she has for these expenses. This itemization and documentation of additional living expenses must be delivered to Nationwide within 30 days of the date of this order. Having denied the plaintiffs' claim for personal property in its entirety, I do not believe Nationwide will be prejudiced by the delay in receiving the itemization of damaged personal property.

### Plaintiffs' Claims for Mental and Emotional Distress

Nationwide asserts that there is no medical evidence sufficient to support a cause of action for mental or emotional distress experienced by either of the plaintiffs, and Nationwide seeks summary judgment on those claims. Nationwide also seeks, by its motion to strike, the exclusion of any testimony concerning Plaintiff Helen Politz's heart condition and her treatment for depression. During the discovery period, Mrs. Politz did not timely disclose her medical records concerning her treatment for depression or for her heart condition.

Dr. Mark Babo, one of Mr. Politz's treating physicians, did not have the opinion that Nationwide's partial denial of Mr. Politz's insurance claim caused Mr. Politz's hypertension (Deposition of Dr. Mark Babo, Page 39, Lines 15 - 22), diabetes (Deposition of Dr. Mark Babo, Page 44, Lines 13 - 24), or his death from osteomyelitis (Deposition of Dr. Mark Babo, Page 20, Lines 8 - 20). Dr. Babo recorded symptoms of anxiety, but did not give Mr. Politz a diagnosis of anxiety. (Deposition of Dr. Babo, Page 65, Line 9 - Page 66, Line 7). Dr. Babo confirmed that Mr. Politz suffered from claustrophobia and that he (Mr. Politz) felt claustrophobic in the FEMA trailer the Plaintiffs lived in after the storm (Deposition of Dr. Babo, Page 50, Line 17 - Page 55, Line 1), but Dr. Babo expressed no opinion concerning the cause of Mr. Politz's claustrophobia which existed before Hurricane Katrina. (Deposition of Dr. Mark Babo, Page 45, Line 5 - Page 47, Line 1) Dr. Babo prescribed Xanax to relieve symptoms of anxiety that may have been related to Mr. Politz's claustrophobia. Dr. Babo saw nothing in Mr. Politz's medical records to indicate that he was ever diagnosed with depression. (Deposition of Dr. Mark Babo, Page 98, Line 6 - Page 99, Line 22) In light of this testimony, I will not permit Mrs. Politz to venture an opinion that Nationwide's actions were the cause of her late husband's hypertension, diabetes, anxiety, claustrophobia, depression, or his death from osteomyelitis.

While Mrs. Politz may, in good faith, have the subjective belief that Nationwide's refusal of her claim for storm damage contributed to her heart condition and to her "depression," I will not permit her to express that belief in the absence of corroborating medical testimony.

In Mississippi cases involving only ordinary negligence and resulting in no bodily injury, damages for mental or emotional distress are allowed if this type of damage is foreseeable. *Adams v. U. S. Homecrafters, Inc.,* 744 So.2d 736 (Miss.1999)*; Universal Life Ins. Co. v. Veasley,* 610 So.2d 290 (Miss.1992)*.* Damages for mental and emotional distress are also recoverable where there has been reckless, grossly negligent, or deliberate misconduct. Because this action encompasses both claims for negligence and for bad faith, I will decline Nationwide's invitation to grant summary judgment on this issue at this time. Any discussion of mental or emotional distress will be excluded from evidence during the first phase of this trial when the issue of contract damages alone will be decided.

### Plaintiffs' Claims for Negligence and for Punitive Damages

Finally, Nationwide asserts that its actions in adjusting this claim were reasonable in light of all the facts surrounding the loss and in light of the then existing jurisprudence on the concurrent cause language in the policy. Nationwide therefore seeks summary judgment on the plaintiffs' claims for negligence and for punitive damages.

While Nationwide has submitted a great deal of evidence to support its contention that the adjustment of Plaintiffs' claim met the standard of reasonable care

and good faith, there is sufficient countervailing evidence to make this a genuine issue of material fact at this juncture. Again, this is not an issue that will be addressed in the first phase of the trial, and I am cognizant that Nationwide altered its opinion and its actions when it became apparent that Nationwide's interpretation of the concurrent cause language might be undermined by legal opinions issued after the plaintiffs' claim was denied. I do not believe an insurer can be found to be negligent or to be acting in bad faith when it is following a reasonable interpretation of its policy language, even if its interpretation is not adopted by the courts.

For these reasons, I will grant in part and deny in part Nationwide's motion [158] for summary judgment, and I will grant in part and deny in part Nationwide's motion [110] to strike the plaintiffs' claim for mental and emotional distress. I will limit the evidence that will be admitted in support of the plaintiffs' claims for emotional distress.

An appropriate order will be entered.

**DECIDED** this 27th day of March, 2009.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE