UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


JOHN POLITZ and HELEN POLITZ                                    PLAINTIFFS

V.                                                CIVIL ACTION NO.1:08CV18 LTS-RHW

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,
U.S. SMALL BUSINESS ADMINISTRATION, ET AL.               DEFENDANTS


**MEMORANDUM OPINION ON MOTIONS CONCERNING EXPERT WITNESSES**

The parties have submitted four motions concerning the expert witnesses who have been identified during the discovery period:

Nationwide Mutual Fire Insurance Company (Nationwide) has challenged the admissibility of the expert opinions expressed by Rocco Calaci (Calaci) [128], Wayne Hudson (Hudson) [130], and Ted L. Biddy (Biddy) [132].

Plaintiff has challenged the admissibility of the expert opinions expressed by Physicians Mace, Sieden, Eckholdt, and Bernstein [274].

**Nationwide's Motions**

The Court has considered the qualifications and methodology used by Calaci and Biddy, and the testimony of these experts has been admitted in other cases where the issue was the cause of property damage sustained during Hurricane Katrina. I have not discovered any new grounds to support exclusion of these expert witnesses' testimony in Nationwide's motions [128] [132] . Consistent with my prior rulings, I will admit the testimony of these two experts.

Hudson has not, to my recollection, previously appeared as an expert witness in any case in which I have presided. Politz retained Hudson to make an estimate of the cost that she would incur in replacing her home. Hudson's estimate was based on various costs per square foot of new construction for the 1523 square feet of heated and cooled living space ($135 per square foot); for the 462 square foot garage ($50 per square foot); for the 24 square foot front porch ($35 per square foot); for the 397 square foot patio ($15 per square foot); for the 600 square foot driveway ($8 per square foot); and for the 55 linear stucco fence ($120 per linear foot). To the costs calculated on these assumptions, Hudson added $6,200 for the cost of replanting and landscaping, arriving at a total estimate of $253,100.

Hudson's expert report contains these calculations (per square foot costs multiplied by the number of square feet given for each part of the Politz structure), but it does not disclose the basis for the per square foot and per linear foot figures he employed. His estimate for replanting and landscaping costs are likewise unexplained.

On October 21, 2008, Hudson gave his deposition testimony. The transcription of this testimony reflects:
- Hudson has been employed in the construction business for approximately 40 years (Page 12);
- Hudson spent approximately five hours reviewing an appraisal of the Politz property along with photographs taken both before and after Hurricane Katrina and doing the calculations set out in his report (Page 17);
- Hudson spent approximately two and one-half hours checking current prices for labor and materials and preparing his report (Page 17);
- Hudson has no formal education in contracting or construction (Pages 19 - 20);
- Hudson holds Mississippi State Contractors License number R006652 (Page 20 - 21);
- Hudson obtained his contractors license in the late 1970s and has maintained his license since that time (Page 24 - 25);
- Hudson has acted as the general contractor for over 500 single family homes on the Mississippi Gulf Coast during his career (Page 27);
- Hudson's usual method of operation as a general contractor, normally working with a set of plans for the proposed home, is to mentally assemble the building from the foundation up and calculate the cost of materials and labor as he progresses (Pages 29 - 35);
- Hudson completes his cost calculations and then adds overhead and profit to arrive at a final estimate (Page 34 - 35);
- Hudson has not built a new home in the past six years, but he has acted as the general contractor to repair or remodel approximately 15 homes damaged during Hurricane Katrina (Pages 47 - 48);
- Hudson has been designated as an expert in approximately 10 cases, but has testified as an expert in only one case, *Oakes v. State Farm Fire and Casualty Company,* Civil Action No. 1:06cv1118 (Page 52 - 55);
- The only opinion Hudson was engaged to give was his estimate of the cost that would be incurred to rebuild the Politz residence (Page 60);
- Hudson relied on four documents in making his estimate: 1) a January 26, 1999, survey prepared by Mr. James Chiniche; 2) a real estate appraisal dated May 21, 2003, prepared by Mr. J. Daniel Schroeder; 3) digital photographs taken before Hurricane Katrina; and 4) digital photographs taken after Hurricane Katrina (Page 65);
- Hudson relied on his experience, his general knowledge of the cost of construction for residential property, and his observation of the increase in the cost of material and labor after the storm to reach a rebuilding cost expressed on a per-square-foot basis, working without a blueprint or a detailed set of plans for the Politz residence (Pages 65 - 92);
- Hudson's calculations for the cost of materials were made on "scratch paper"

and discarded (Pages 100 - 101):

     - Hudson agreed with Nationwide's counsel's statement that there are three types of methodology a contractor can use to generate an estimate of the cost of reconstructing a home: 1) the "quality survey method" that uses "a detailed inventory of every item of every material, equipment, labor, overhead and profit"; 2) the "unit in place method" that relies on various values per square foot assigned based on the characteristics of the building in question; and 3) the "square footage method" that uses one value per square foot for the entire structure, that value being multiplied by the total square footage of the building (Pages 105 -108);

     - Hudson did not follow the quality survey method because detailed plans and specifications for the Politz home were not available (Pages 106 - 108);

     - Hudson did not consult any of the three data compilations (RS Means, Marshall & Swift, and Blue Book) concerning the cost of residential construction with which he was familiar (Pages 110 - 112).

In essence, Hudson used his experience in the construction, repair, and remodeling of houses along the Gulf Coast, including 15 reconstruction projects done since Hurricane Katrina, to make a per square foot estimate for the heated and cooled main house, the garage, the front porch, patio, driveway, and fence. He also relied on his experience in purchasing sod to estimate the cost that would be incurred in replanting the yard of the Politz residence. But beyond this explanation, Hudson was not able to articulate any of the assumptions that underlie his estimates. Thus, Hudson's estimate is somewhat opaque. Hudson was working without having the advantage of specifications or blueprints of the Politz residence, so he had to rely on information about materials and the configuration of the house he gleaned from photographs and an appraisal that were furnished to him by the plaintiff's counsel.

Federal Rules of Evidence 702 provides:

*If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.*

My review of Hudson's deposition testimony and his written opinion suggests that he is fully qualified as an expert in residential construction and repair based on his 36 years' experience in his field. While both parties and Hudson acknowledge that a better estimate could have been made using the blueprints or detailed plans for the Politz property, these were not available. The house was reduced to a slab, and the materials Hudson relied upon were the best available at the time he was engaged as an expert.

While Nationwide's representatives have challenged Hudson's failure to consult relevant data compilations concerning the cost of residential construction, they have not gone the next step to show that Hudson's estimate is inconsistent with the figures reflected in these data compilations. An estimate based entirely on one of the data compilations discussed in Hudson's deposition, R.S.Means, was excluded in *St. Charles Condominium Homeowners Association, Inc. v. Landmark American Insurance Company*, Civil Action No. 1:06cv632 HSO-RHW, on the grounds that this data was not sufficiently specific to the facts of that case.

Nationwide will have wide latitude in cross-examining Hudson. *Parliament Ins. Co. v. Hanson*, 676 F.2d 1069 (5th Cir. 1982). Nationwide has already demonstrated its ability to effectively cross examine Hudson during his deposition.

While more supporting data and more detailed calculations would make the Court more comfortable in ascertaining the reliability of Hudson's opinion, it appears to me that he has done his best to make a reasonable estimate of the reconstruction cost at issue given the limited materials that were available. His direct participation in 15 post-Katrina residential reconstruction projects, his first hand knowledge of the cost of materials and labor in this area, and his extensive experience as a general contractor for residential property in this area are sufficient, in my opinion, to meet the standards of Rule 702 of the Federal Rules of Evidence, and I have seen nothing to indicate that there was any other methodology Hudson could have followed that would be more generally recognized in this field, given the dearth of material available to Hudson. In my opinion, the issues raised by Nationwide go to the weight, and not the admissibility of Hudson's opinions. Accordingly, I will deny Nationwide's motion [130] to exclude Hudson's testimony.

**Plaintiff's Motion**

Plaintiff asks the Court to exclude the testimony of three physicians who treated her for health problems she suffered after Hurricane Katrina. None of these physicians has expressed an opinion that the controversy surrounding her insurance claim caused or contributed to cause any of the plaintiff's medical problems. Indeed, the plaintiff's medical records do not reflect any discussion of her insurance claim or of her difficulty in resolving her claim with any of these treating physicians.

Nationwide asserts that the plaintiff suffered stress from several factors other than the difficulty she has encountered in resolving her insurance claim against Nationwide, i.e. the death of her husband, having undergone heart bypass surgery and shoulder surgery, and the loss of her home and possessions in the storm. Nationwide argues that any or all of these factors may have caused or contributed to cause plaintiff's post-Katrina mental and emotional distress. Nationwide contends that should the plaintiff undertake to show that she has suffered mental and emotional distress because of her controversy with Nationwide, she would thereby put her mental and

emotional state and the cause of her anxiety and of her mental and emotional distress at issue in her case. In this event, Nationwide asserts that it should then be free to defend against this charge by showing–through plaintiff's medical records and the testimony of her physicians–that these other factors exist and should be taken into consideration in ascertaining the cause of the plaintiff's anxiety, mental distress, and emotional distress.

After reviewing the deposition testimony of these physicians, I am of the opinion that I should not prohibit Nationwide's introduction of relevant portions of this testimony along with related portions of the plaintiff's post-Katrina medical records. This evidence lends at least some support to Nationwide's assertion that the plaintiff's dispute over her homeowners coverage is only one of several factors that may have caused or contributed to cause the mental and emotional distress the plaintiff has suffered. Accordingly, I will deny the plaintiff's motion [274] to exclude the testimony of these physicians, to the extent that this testimony has a bearing on the question of the cause of the plaintiff's mental and emotional distress.

An appropriate order will be entered.

**DECIDED** this 18th day of May, 2009.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE